**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHRIS E. MALING, *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 12-cv-10639-JGD |
| FINNEGAN, HENDERSON, FARABOW, GARRETT, DUNNER, LLP, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

I.  MATERIAL FACTS ............................................................................................... 1

II.  ARGUMENT ...................................................................................................... 4

    **A.**  All Claims Filed by The Formula must be Dismissed or Stricken for
        Failure to Appear by Counsel. ........................................................................ 4

    **B.**  The Complaint Fails to State Facts Supporting a Claim for Legally
        Cognizable Damages Caused by the Defendants' Conduct................................ 7

    **C.**  The Complaint Fails to State a Claim for Violation of the Unfair and
        Deceptive Trade Practices Statute. ................................................................ 12

III.  CONCLUSION................................................................................................. 16

## TABLE OF AUTHORITIES

**CASES**

*Alli* v. *United States*, 93 Fed. Cl. 172 (Ct. Fed. Cl. 2010) ............................................. 5

*American Tel. & Tel. Co.* v. *IMR Capital Corp.*, 888 F. Supp. 221 (D. Mass. 1995) .................................................................................................................. 14

*Assicurazioni Generali,S.P.A.* v. *First State Ins. Co.*, 87 F.3d 1317, 1996 WL 338356 (9th Cir. 1996) .......................................................................................... 9

*Beaudreault* v. *ADF, Inc.*, 635 F. Supp. 2d 121 (D.R.I. 2009) ........................................ 5

*Bischoff* v. *Waldorf*, 660 F. Supp. 2d 815 (E.D. Mich. 2009) ........................................ 5

*Brown* v. *Accredited Home Lenders, Inc.*, 2009 WL 6297594 (Mass. Super. 2009) .................. 12

*C.W. Keller & Assocs., Inc.* v. *Cullen*, 2000 WL 1180539 (Mass. Super. 2000) ........................ 14

*Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*, 840 F. Supp. 2d 473 (D. Mass. 2012) .................................................................................................................. 7

*Darviris* v. *Petros*, 795 N.E.2d 1196 (Mass. App. 2003), *aff'd*, 812 N.E.2d 1188 (Mass. 2004) ...................................................................................................... 13

*Davis, Malm, D'Agostine, P.C.* v. *Vale*, 2005 WL 1155171 (Mass. Super. 2005)...................... 14

*Grace* v. *Leumi Trust Co.*, 443 F.3d 180 (2d Cir. 2006) ................................................. 5

*In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011) .................................................... 5

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection*, 758 F. Supp. 2d 1077 (S.D. Cal. 2010) ........................................................................................... 2

*In re Tremont Tower Condo. LLC*, 2005 WL 6731061 (1st Cir. BAP 2005), *aff'd*, 2006 WL 845838 (1st Cir. 2006).......................................................................... 5

*Indigo Am., Inc.* v. *Big Impressions, LLC*, 597 F.3d 1 (1st Cir. 2010) .......................................... 6

*Instituto de Educacion Universal Corp.* v. *United States Dep't of Educ.*, 209 F.3d 18 (1st Cir. 2000) ................................................................................................ 6

*Jernigan* v. *Giard*, 500 N.E.2d 806 (Mass. 1986) ........................................................ 8

*Lattanzio* v. *COMTA*, 481 F.3d 137 (2d Cir. 2007)....................................................... 4

*Lowrie* v. *Castle*, 113 N.E. 206 (Mass. 1916)............................................................. 12

*Madan* v. *Royal Indem. Co.*, 532 N.E.2d 1214 (Mass. App. 1989)............................................. 13

*Massachusetts Employers Ins. Exchange* v. *Propac-Mass, Inc.*, 648 N.E.2d 435
(Mass. 1995) ............................................................................................................... 13

*Massachusetts* v. *Westcott*, 431 U.S. 322 (1977)............................................................ 2

*Max-Planck-Gesellschaft E.V.* v. *Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d
353 (D. Mass. 2010).................................................................................................... 8

*McCann* v. *Davis, Malm & D'Agostine*, 669 N.E.2d 1077 (Mass. 1996) ............... 7, 16

*McElroy* v. *Robinson & Cole LLP*, 809 N.E.2d 1100, 2004 WL 1292042 (Mass.
App. 2004) .................................................................................................................. 7

*Meyer* v. *Wagner*, 709 N.E.2d 784 (Mass. 1999) ........................................................ 14

*Ocasio-Hernandez* v. *Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011)............................. 10

*OrbusNeich Med. Co.* v. *Boston Scientific Corp.*, 694 F. Supp. 2d 106 (D. Mass.
2010) ........................................................................................................................... 2

*Pelletier* v. *Chouinard*, 534 N.E.2d 813 (Mass. App. 1989) ......................................... 7

*Piscitello* v. *Hobart Corp.*, 799 F. Supp. 224 (D. Mass. 1992) ................................. 5, 6

*PMP Associates, Inc.* v. *Globe Newspaper Co.*, 321 N.E.2d 915 (Mass. 1975) ......... 13

*Poly* v. *Moylan*, 667 N.E.2d 250 (Mass. 1996)........................................................... 14

*Robinson* v. *Bodoff*, 382 F. Supp. 2d 229 (D. Mass. 2005) ......................................... 7

*Rowland* v. *California Men's Colony*, 506 U.S. 194 (1993) ......................................... 4

*Russo* v. *Baxter Healthcare Corp.*, 140 F.3d 6 (1st Cir. 1998) .................................. 12

*Schreibman* v. *Walter E. Heller & Co. (In re Las Colinas Dev. Corp.)*, 585 F.2d 7
(1st Cir. 1978)......................................................................................................... 4, 5

*Sentinel Products Corp.* v. *Platt*, 2002 WL 1613713 (D. Mass. 2002) ..................... 7, 9

*Shepard's Pharmacy, Inc.* v. *Stop & Shop Cos.*, 640 N.E.2d 1112 (Mass. App.
1994) ......................................................................................................................... 13

*Spence* v. *Boston Edison Co.*, 459 N.E.2d 80 (Mass. 1983)....................................... 13

*Unger* v. *Paul Weiss*, 696 N.Y.S.2d 36 (App. Div. 1st Dep't 1999)......................... 7, 9

*Vitek Sys., Inc.* v. *Abbott Labs.*, 675 F.2d 190 (8th Cir. 1982) ................................... 2

*Volumetric Imaging, Inc.* v. *Teledyne, Inc.*, 194 F.R.D. 373 (D. Mass. 2000) ........................... 5, 6

*Watterson* v. *Page*, 987 F.2d 1 (1st Cir. 1993) ............................................................. 2

**STATUTES**
G.L. c. 93A, § 11 ........................................................................................ passim

G.L. c. 93A, § 2 ............................................................................................... 13

G.L. c. 93A, § 9 ............................................................................................... 13

**RULES**
D. Mass. Local Rule 83.5.2(d) ............................................................................. 4

Fed. R. Evid. 201(b)(2) ..................................................................................... 2

**TREATISES**
R. Mallen & J. Smith, LEGAL MALPRACTICE § 17:18 (2011 ed.) ................................... 7

**OTHER AUTHORITIES**
S. Miller, *Ethical Considerations in Rendering Patent Opinions*, 88 J. PATENT &
TRADEMARK OFFICE SOC'Y 1019 (2006) ............................................................. 8

This is a legal malpractice case against a patent law firm in which the client alleges, amazingly enough, that the law firm erred by procuring exactly the patents the client sought. There is no tenable allegation that the law firm mishandled any aspect of the patent prosecution. Instead, plaintiffs complain that if the law firm had disclosed confidential information about another firm client – a nominal competitor that obtained a patent in the same general area – plaintiffs would not have sought any patents or invested in their own company. This theory, aside from its facial implausibility, fails to allege that plaintiffs would have achieved a better result if they had retained "conflict-free" counsel. Nor could plaintiffs credibly make any such allegation when their lawyers achieved exactly the result plaintiffs wanted.

For these reasons, defendants Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP ("Finnegan"), and the five current or former Finnegan attorneys who have been named as defendants (Lawrence R. Robins, Eric P. Raciti, Matthew R. Van Eman, Ernest F. Chapman, and Arthur S. Garrett), move to dismiss the Complaint for failure to state a claim. Mr. Chapman and Mr. Garrett have separately filed a motion to dismiss for lack of personal jurisdiction, which adopts this motion as an alternative basis for dismissal.

## I.   MATERIAL FACTS

The plaintiffs in this case are Chris E. Maling and a company he controls called The Formula, LLC. Mr. Maling, who is not an attorney, signed the Complaint for both plaintiffs. Mr. Maling filed the Complaint on April 10, 2012, but waited more than four months before serving process on defendants. No attorney has entered an appearance for either plaintiff.[1]

---

[1] Defendants have had communications with an attorney for Mr. Maling, who may have assisted Mr. Maling in drafting his Complaint, but that attorney has expressly stated that he will not be appearing for plaintiffs in the litigation.

The Complaint alleges that plaintiffs retained Finnegan in 2003 to pursue patents for a "screwless eyeglasses hinge block design." Compl. ¶ 13. Plaintiffs do not allege that Finnegan failed to prosecute the patents, or even that the firm failed to obtain them. Nor could plaintiffs make any such allegation.[2] Instead, plaintiffs claim that Finnegan failed to disclose that it represented a different client, Masunaga Optical Mfg. Co. Ltd., in seeking to domesticate a Japanese patent in the United States.[3] The Masunaga patent application involved a different type of screwless-hinge eyeglass design. Plaintiffs claim that the Masunaga patent is similar to the plaintiffs' design in "many important respects," although the only one identified in the Complaint is that the two designs supposedly have "a vertical bore for accepting a section of the temple arm and an open peripheral groove for accepting another section of the temple arm." Compl. ¶ 21.[4]

Because Finnegan succeeded in obtaining patents for plaintiffs, the Complaint struggles to articulate a cognizable and concrete theory of damage. Plaintiffs alternately speculate that

---

[2]    Plaintiffs' patents are readily accessible in the USPTO's public database (http://patft.uspto.gov/netahtml/PTO/search-bool.html). *See* U.S. Patent No. 7,101,039 (Sep. 5, 2006); No. 7,341,343 (Mar. 11, 2008); No. 7,354,149 (Apr. 8, 2008); No. 7,703,914 (Apr. 27, 2010). For convenience, defendants attach the four Maling patents as Exhibits 1 through 4 to the Declaration of Erin K. Higgins. The Court may take judicial notice of these public records. *See Massachusetts* v. *Westcott*, 431 U.S. 322, 323 n.2 (1977); *Watterson* v. *Page*, 987 F.2d 1, 3-4 (1st Cir. 1993); Fed. R. Evid. 201(b)(2); *see also Vitek Sys., Inc.* v. *Abbott Labs.*, 675 F.2d 190, 192 n.4 (8th Cir. 1982) (court may take judicial notice of PTO documents); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection*, 758 F. Supp. 2d 1077, 1086 n.4 (S.D. Cal. 2010); *cf. OrbusNeich Med. Co.* v. *Boston Scientific Corp.*, 694 F. Supp. 2d 106 (D. Mass. 2010) (allowing consideration of one of several patent applications relevant to a motion to dismiss).

[3]    The Masunaga patent (No. 6,767,096; *see* Compl. ¶ 19), which was issued to the inventor Kiyoshi Hiramoto and assigned to Masunaga and another, is attached as Exhibit 5 to the Higgins Declaration. As indicated therein, the patent was issued in Japan in July 2002, and a patent application was filed in the United States on April 24, 2003. The patent issued in the United States on July 27, 2004. In addition, defendants attach as Exhibit 6 to the Higgins Declaration a true copy of a screen from the USPTO's electronic database showing that the Masunaga patent expired for nonpayment of maintenance fees on July 27, 2008.

[4]   In fact, the designs are not at all similar, and the USPTO issued patents for each.

2

they would not have paid Finnegan "thousands of dollars" to pursue the patents had Finnegan "disclosed" its work for Masunaga, Compl. ¶ 28, and that they would not have paid "millions of dollars to develop products based on" their design had they known of the Masunaga design. *Id.* ¶ 29.[5]   Plaintiffs also assert that their harm "includes the diminution in value of the Plaintiffs' patent and Inventions" of some unstated amount. *Id.* ¶ 30.   Plaintiffs do not even attempt to square their various damage theories by explaining how they could have lost value in patents that they now claim they should not have pursued in the first place.

Plaintiffs set forth two other theories of liability in two unexplained sentences.   They allege that Finnegan "failed to disclose information to the USPTO [U.S. Patent and Trademark Office] that Finnegan was in possession of by way of independent patent searches conducted by a qualified patent expert." Compl. ¶ 32.   And they allege that Finnegan filed an amendment to one of the issued patents "without the knowledge or consent of the Plaintiffs."   Compl. ¶ 33. Plaintiffs make no effort to link these (false) allegations to cognizable damages.

Plaintiffs do not make any allegations with respect to Finnegan's conduct beyond those set forth above.   The sum of the Complaint is that Finnegan represented two eyeglass manufacturers in wholly separate administrative proceedings before the PTO.   The Complaint does not identify any Masanuga product bearing a resemblance to the design described in the Masanuga patent, much less allege that a product based on the Masunaga design competed or could have competed with a Formula product.   Finnegan did not pursue or defend litigation

---

[5] As plaintiffs well know, the Masunaga patent is not the only screwless hinge design that predated Maling's patent application, nor is it the closest one to Maling's design.   The original Maling patent expressly disclosed as prior art a screwless hinge design that is manifestly closer to the Maling design than the Masunaga patent. *Compare* Ex. 1, at Fig. 11, with Ex. 5, at Figs. 4A-6B.   The Maling application also cited a list of other eyeglass-frame patents that had similar features. *See* Ex. 1, at 1.   In defendants' view, plaintiffs' retrospective claim that specific knowledge of the Masunaga design would have made any difference to them whatever is not just implausible; it is knowingly false and vexatious.

3

between the competitors; it did not disclose either client's confidential information to the other; and it did not take any action that was adverse to either client.

Notably, the Complaint is devoid of any factual allegation that plausibly suggests that Finnegan engaged in unfair or deceptive trade practices within the meaning of G.L. c. 93A. In sum, plaintiffs allege that Finnegan failed to discover and advise plaintiffs of a purported conflict of interest. These allegations are insufficient to state a claim for violation of G.L. c. 93A, especially where plaintiffs admit that Finnegan accomplished precisely what plaintiffs hired it to do.

The Complaint contains three causes of action. Count I alleges breach of fiduciary duty; Count II alleges "negligence/legal malpractice"; and Count III alleges a violation of § 11 of G.L. c. 93A, the Massachusetts unfair and deceptive trade practices statute. Each of these counts fails to state a claim for the following reasons.

## II.  ARGUMENT

### A.  All Claims Filed by The Formula must be Dismissed or Stricken for Failure to Appear by Counsel.

According to the Complaint, "Plaintiff Formula, LLC . . . is a Massachusetts limited liability company." Compl. ¶ 2. Mr. Maling is the managing member of Formula. *Id.* Under Local Rule 83.5.2(d) and common law, business entities may not appear in court proceedings except through counsel. *Schreibman* v. *Walter E. Heller & Co. (In re Las Colinas Dev. Corp.)*, 585 F.2d 7, 13 (1st Cir. 1978) ("One of the time-hallowed restrictions on corporations has been that, in court proceedings, they must be represented by a licensed attorney."). The rule applies to all artificial entities, *Rowland* v. *California Men's Colony*, 506 U.S. 194, 201-02 (1993), including single member LLCs. *Lattanzio* v. *COMTA*, 481 F.3d 137 (2d Cir. 2007); *see In re*

*Tremont Tower Condo. LLC*, 2005 WL 6731061, at *2 (1st Cir. BAP 2005), *aff'd*, 2006 WL 845838 (1st Cir. 2006).   The Court of Appeals for the First Circuit has held that the rule prohibiting *pro se* appearances by corporations complies with the federal constitution and anti-trust laws, *see Beaudreault* v. *ADF, Inc.*, 635 F. Supp. 2d 121, 122 (D.R.I. 2009) (citing *Schreibman*, 585 F.2d at 12-13), and lower courts have rigorously enforced the rule.   *E.g.*, *Volumetric Imaging, Inc.* v. *Teledyne, Inc.*, 194 F.R.D. 373, 375 (D. Mass. 2000) ("rule applies to a person purporting to be president or some other official of the corporate entity"); *Piscitello* v. *Hobart Corp.*, 799 F. Supp. 224, 225 (D. Mass. 1992); *Long Timers Group* v. *Magnusson*, 2009 WL 3806129 (D. Me. 2009).   Exceptions are rare; there is no poverty exception, for instance, *Schreibman*, 585 F.2d at 11-12, and an entity generally may not evade the rule by assigning the claim to an individual.   *E.g.*, *Bischoff* v. *Waldorf*, 660 F. Supp. 2d 815, 820-21 (E.D. Mich. 2009).

In this case, the Court should dismiss the Complaint as to Formula rather than fashion some other form of relief, such as a conditional order requiring Formula to retain counsel.   *See Grace* v. *Leumi Trust Co.*, 443 F.3d 180, 192 (2d Cir. 2006) (corporate *pro se* pleadings are a "nullity" and court should dismiss any action or motion filed by a corporation *pro se*); *Alli* v. *United States*, 93 Fed. Cl. 172 (Ct. Fed. Cl. 2010) ("Where a corporate-plaintiff fails to obtain counsel, the ordinary remedy is to dismiss its complaint for lack of prosecution."), *appeal dismissed*, 447 Fed. Appx. 223 (Fed. Cir. 2011); *cf. In re IFC Credit Corp.*, 663 F.3d 315 (7th Cir. 2011) (rule is not jurisdictional and therefore court was not required to void an original *pro se* pleading after corporation obtained counsel, although in other circumstances court would have discretion to do so).   In this Circuit, it appears that lower courts possess a measure of discretion in determining whether to issue a direct or conditional dismissal or order to strike the

5

unauthorized pleading. *See Indigo Am., Inc.* v. *Big Impressions, LLC*, 597 F.3d 1 (1st Cir. 2010) (lower court should not have defaulted *pro se* corporate defendant where plaintiff did not move to strike defendant's *pro se* answer and instead waited eight months before moving for default); *see also Instituto de Educacion Universal Corp.* v. *United States Dep't of Educ.*, 209 F.3d 18, 22 (1st Cir. 2000) (given short period available for filing notice of appeal, corporate officer would be permitted to sign notice of appeal so long as attorney thereafter handles the appeal).

The typical case giving an unrepresented entity more time to obtain counsel involves a corporate defendant that files a *pro se* <u>response</u> to a complaint. *E.g.*, *Piscitello*, *supra*, 799 F. Supp. at 225. In that situation, it makes somewhat more sense to give the entity time to find counsel, since a defendant has only a brief period to respond to a complaint, whereas a plaintiff chooses when to file. In this case, by contrast, plaintiffs have had years to retain counsel. They failed or refused to do so, and instead Mr. Maling filed the Complaint *pro se*, doubtless in an attempt to toll the statute of limitations. After four months, plaintiffs still have not retained counsel, and they have not tendered any reasonable excuse or exceptional circumstances justifying their failure. *See Volumetric Imaging*, 194 F.R.D at 375. In these circumstances, the court should dismiss or strike Formula's complaint.

For these reasons, defendants respectfully request that the Court dismiss all claims filed by Formula or strike the Complaint as to Formula for its failure to appear by counsel.

**B. The Complaint Fails to State Facts Supporting a Claim for Legally Cognizable Damages Caused by the Defendants' Conduct.**

Plaintiffs' chief allegation of wrongful conduct is an undisclosed alleged conflict of interest in Finnegan's representation of two clients in the same industry.[6] Even if plaintiffs adequately alleged wrongful conduct, they still must plead facts that could establish that the conduct (1) proximately caused (2) legally cognizable damages. "The existence of a conflict without proof of causally-related damage is insufficient." *Robinson* v. *Bodoff*, 382 F. Supp. 2d 229 (D. Mass. 2005) (citations omitted); *Sentinel Products Corp.* v. *Platt*, 2002 WL 1613713, at *2-3 (D. Mass. 2002) (in action alleging conflict of interest in patent prosecution and raising claims of malpractice, breach of fiduciary duty, and breach of G.L. c. 93A, proof of proximate cause required for each claim); R. Mallen & J. Smith, LEGAL MALPRACTICE § 17:18, at 1005 (2011 ed.) ("The representation of conflicting interests . . . is not actionable without proof that the conduct caused damages."). Proof of proximate cause "may not rest on mere speculation." *McElroy* v. *Robinson & Cole LLP*, 809 N.E.2d 1100, 2004 WL 1292042 (Mass. App. 2004). And as with any other element of their claims, plaintiffs must allege facts that support legally cognizable damages. *Cold Spring Harbor Lab.* v. *Ropes & Gray LLP*, 840 F. Supp. 2d 473, 479 (D. Mass. 2012) (breach of fiduciary duty); *Pelletier* v. *Chouinard*, 534 N.E.2d 813, 815 (Mass. App. 1989) ("the suffering of actual damages is an element of the tort of legal malpractice"); *McCann* v. *Davis, Malm & D'Agostine*, 669 N.E.2d 1077, 1079 (Mass. 1996) (negligence and G.L. c. 93A claim); *see also Unger* v. *Paul Weiss*, 696 N.Y.S.2d 36 (App. Div. 1st Dep't 1999)

---

[6] Plaintiffs also allege that Finnegan failed to disclose information to the USPTO and filed an amendment to one of the issued patents without plaintiffs' knowledge or consent, but they allege *no* facts that would support a finding of damages based on these alleged acts.

(complaint properly dismissed for failure to allege that plaintiff would have prevailed in underlying litigation had firm disclosed alleged conflict).

"A plaintiff in a legal malpractice action proves causation by proving it would have achieved a different, better result had the malpractice not been committed." *Max-Planck-Gesellschaft E.V.* v. *Wolf Greenfield & Sacks, PC*, 736 F. Supp. 2d 353, 363 (D. Mass. 2010); *see also Jernigan* v. *Giard*, 500 N.E.2d 806, 807 (Mass. 1986). When the plaintiff alleges a conflict of interest in a patent prosecution, the plaintiff must show that "if the [lawyers] were conflict-free, the [relevant] patent claims would be stronger." *Max-Planck*, 736 F. Supp. 2d at 363.

Plaintiffs' Complaint suffers from a fundamental logical flaw in its attempt to allege damages proximately caused by the defendants. Plaintiffs cannot credibly allege that Finnegan failed to represent them capably, because Finnegan in fact obtained the patents that plaintiffs sought. *See supra* n.1. Instead, plaintiffs adopt a novel theory that Finnegan's failure to disclose its representation of Masunaga caused them harm. The theory appears to be that Finnegan was required to disclose the Masunaga representation in order to obtain plaintiffs' consent to the "conflicting" representations – a dubious allegation in this case[7] – and had plaintiffs known of

---

[7] Presumably, plaintiffs are relying on standards imposed by Rule 1.7 of the Massachusetts Rules of Professional Conduct. Under subsection (a) of that rule, a lawyer shall not represent a client if the representation will be "directly adverse" to another client unless "(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and (2) each client consents after consultation." Under subsection (b), the lawyer may not represent a client if the representation will be "materially limited" by the lawyer's other responsibilities unless "(1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. . . ." As the commentary to the Rule explains, however, "simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients." *Id.* comment 3. And as commentators have observed, "it is not unusual for a private firm to represent more than one company in patent procurement in the same general industry or technical field. Given the concentration and specialization in IP practice this is hardly surprising." S. Miller, *Ethical Considerations in Rendering Patent Opinions*, 88 J. PATENT & TRADEMARK OFFICE SOC'Y 1019, 1043 (2006).

the Masunaga patent application or patent, plaintiffs would not have paid money to pursue their own patents, nor would they have invested in their own company. Compl. ¶¶ 28-29.

The first flaw in this theory is that it simply does not pass the *Twombly-Iqbal* test of facial plausibility. A client who comes to a lawyer seeking a patent and leaves with the patent cannot credibly maintain that he would have trashed his entire business plan and terminated the representation if he had known about another design that *did not prevent or even delay him from getting a patent*. Defendants are not aware of any case in which a plaintiff even made such an allegation. The viability of plaintiffs' claim cannot turn on Mr. Maling's unilateral assertion, no matter how implausible or irrational, of what business decisions he might have made, or how his decisions would have been received in the commercial marketplace, if his lawyers had sought his consent to a potentially conflicting representation. *See Assicurazioni Generali,S.P.A.* v. *First State Ins. Co.*, 87 F.3d 1317, 1996 WL 338356, at *6 (9th Cir. 1996) (client not damaged by lawyer's failure to advise client of conflict of interest before undertaking representation); *Unger* v. *Paul Weiss*, 696 N.Y.S.2d 36 (App. Div. 1st Dep't 1999) ("It cannot be inferred from the complaint that plaintiff would have prevailed in the underlying litigation, or saved any expense compensable in malpractice or fraud, had the firm disclosed the alleged conflict.").

Moreover, a client cannot establish damages caused by a lawyer's conflict of interest unless the client can plausibly allege that a conflict-free lawyer would have achieved a *better* result (*e.g.*, broader or stronger patents), not a worse result (*e.g.*, no patents, where patents were available). In *Sentinel Products Corp.* v. *Platt*, 2002 WL 1613713 (D. Mass. 2002), for instance, a company sued its former law firm for negligence in prosecuting the company's patent applications, in part because the law firm represented both the company and a former company employee in separate patent applications for products relating to polymer foam. Although the

9

company eventually obtained patents, its initial applications were rejected because the PTO found that its claims conflicted with the employee's patent.

The court granted the law firm's motion for summary judgment on claims for breach of fiduciary duty, negligence, and violation of G.L. c. 93A. The court concluded that even though the same attorneys worked on the two matters, and apparently were instructed to emphasize differences in the two technologies, the plaintiff could not prove causation or damage. The plaintiff argued that it was damaged, at minimum, during the period when its patents were delayed because it did not enter the market for fear that its products would infringe on the employee's patents. The court held:

> None of this evidence demonstrates that [the company] sustained damages as a result of the defendants' negligence or conflict of interest. At best, the evidence shows that [the company's] patent applications were delayed and narrowed because of [the employee's] patents. What is not shown by any of the evidence offered is that if [the company] had been represented by a different, conflict-free attorney, it would not have experienced the same delays and narrowing. That is to say, [the company] has not offered evidence to prove that [the attorneys] intentionally or inadvertently pulled their punches in prosecuting [the company's] applications or otherwise failed to vigorously represent [the company's] interests. Instead, it appears that any potential or actual conflict of interest was not the cause of [the company's] difficulties. Though [the employee's] patents themselves may have limited [the company's] ability to achieve broad patents, there is no evidence offered that if [the company] had had different representation, its patent applications would have fared any better.

2002 WL 1613713, at *4.

Plaintiffs in this case cannot show, and indeed they have not even alleged, that they would have obtained a better result had they utilized other, "conflict-free" counsel. This is because plaintiffs are not claiming (or at least have not alleged facts that would support a claim[8])

---

[8] The Court must discount conclusory allegations that are not supported by any averments of fact. *E.g.*, *Ocasio-Hernandez* v. *Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (plaintiff may not rely on "threadbare recitals of the elements of a cause of action") (citations and internal quotations omitted). Thus, the Court should not credit

that they would have obtained more robust patents had they utilized another law firm. Plaintiffs are not even claiming that another law firm would have procured patents for them more rapidly or inexpensively – a claim the court *rejected* in *Sentinel*. On the contrary, plaintiffs' claim seems to be that conflict-free counsel would not have achieved the objective of the representation – to obtain patents – and that Finnegan erred by achieving the clients' objective. That is not a cognizable theory of damages in a conflict-of-interest case.

Nor can plaintiffs plausibly allege damage arising from some information they should have learned about their purported competitor when they tried to retain the competitor's law firm. The fact that a lawyer owes a client a duty to avoid conflicts of interest does not mean a client has a right to know the basis of a potential conflict. *See, e.g.*, Mass. R. Prof. Conduct 1.7 comment [5] ("there may be circumstances where it is impossible to make the disclosure necessary to obtain consent"). If the lawyer accepts a matter subject to an unwaived conflict of interest, then the client may recover for any damages proximately caused by that *conflict*; *i.e.*, the value of the difference between what the conflicted counsel obtained and what conflict-free counsel would have obtained. But the client may not recover damages for failure to obtain a collateral benefit from information the client might have learned about a competitor during the process of clearing the conflict. That simply is not part of a lawyer's duty to a client.

Finally, plaintiffs' theory of damages is too speculative to support a claim under Massachusetts law. "Manifest ambiguities in ascertaining what would have been the course of events in the face of complicated factors, under circumstances which never have come to pass,

---

plaintiffs' allegation that "[d]ue to this conflict, Finnegan was unable to fully and without restraint represent the interests of Plaintiffs." Compl. ¶ 26. No averment of fact supports that claim and, indeed, the fact that plaintiffs obtained the patents they sought makes it unlikely that plaintiffs could amend the Complaint to include a cognizable factual allegation.

and inherent difficulties in calculating the amount of prospective gains, prevent the recovery of damages." *Lowrie* v. *Castle*, 113 N.E. 206, 210 (Mass. 1916); *see also Russo* v. *Baxter Healthcare Corp.*, 140 F.3d 6, 12 (1st Cir. 1998) (under Rhode Island law, U.S. patent holder's failure to apply for foreign patents rendered damage claim based on potential foreign patents wholly speculative); *Brown* v. *Accredited Home Lenders, Inc.*, 2009 WL 6297594 (Mass. Super. 2009) (same). Plaintiffs' theory of damage is based on utter speculation and conjecture. A finder of fact would have to conclude that (1) a "conflict-free" lawyer would have uncovered and reported the Masunaga patent application to plaintiffs; and (2) plaintiffs would have abandoned their business and invested no further funds based on knowledge of the Masunaga patent, notwithstanding the undeniable fact that plaintiffs still could have obtained the patents they wanted. In addition, plaintiffs have not identified any Masunaga product that actually competed with or could have competed with a product that plaintiffs marketed or wanted to market. This is not a tenable theory of damages. It is a cynical attempt to blame a law firm for the clients' own failure to build its business.

For these reasons, the Court should dismiss all claims in the Complaint for failure to allege a cognizable theory of damages caused by the defendants' wrongful conduct.

## C. The Complaint Fails to State a Claim for Violation of the Unfair and Deceptive Trade Practices Statute.

In Count III of the Complaint, plaintiffs claim that defendants violated G.L. c. 93A, § 11. Compl. at ¶ 71. The Court should dismiss this claim not only because plaintiffs fail to allege a cognizable theory of damages, but also because plaintiffs fail to allege any facts that plausibly suggest that Finnegan employed any unfair or deceptive trade practices. In an action brought under G.L. c. 93A, § 11, where both parties are engaged in trade or commerce, the standard of

12

proof of unfairness or deceptiveness is higher than the standard employed in actions under G.L. c. 93A, § 9, which applies to consumers. *Madan* v. *Royal Indem. Co.*, 532 N.E.2d 1214, 1217 n. 7 (Mass. App. 1989) (where parties are involved in trade or commerce, their conduct is judged "by a standard of unfairness higher than . . . where actions are brought by a consumer"). An act that might be considered unfair when practiced upon a commercial innocent will not be viewed in the same light as when the plaintiff is in business and presumably is more sophisticated. *See Spence* v. *Boston Edison Co.*, 459 N.E.2d 80, 88 (Mass. 1983).

To state a claim for violation of G.L. c. 93A, § 11, plaintiffs must allege: 1) that defendants are engaged in trade or commerce; 2) that defendants used or employed an unfair or deceptive act or practice; and 3) that defendants' unfair or deceptive conduct caused substantial injury to the plaintiffs. *See* G.L. c. 93A, §§ 2, 11; *see also PMP Associates, Inc.* v. *Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975). The statute does not define "unfair or deceptive" conduct; rather, it "depends on the facts and circumstances of each case." *Darviris* v. *Petros*, 795 N.E.2d 1196, 1200 (Mass. App. 2003), *aff'd*, 812 N.E.2d 1188 (Mass. 2004). Nevertheless, it is up to the court, as a matter of law, to determine "the boundaries of what may qualify for consideration as a c. 93A violation[.]" *Id.* (quoting *Shepard's Pharmacy, Inc.* v. *Stop & Shop Cos.*, 640 N.E.2d 1112, 1115 (Mass. App. 1994)). In deciding questions of unfairness under G.L. c. 93A, the Court must examine the "nature of [the] challenged conduct and the purpose and effect of that conduct as the crucial factors in making a G.L. c. 93A fairness determination." *Massachusetts Employers Ins. Exchange* v. *Propac-Mass, Inc.*, 648 N.E.2d 435, 438 (Mass. 1995).

Plaintiffs claim that Finnegan violated G.L. c. 93A "b]y failing to disclose a conflict of interest, and engaging in other misconduct stated above . . . ." Compl. ¶ 48. Presumably, the

13

"other misconduct stated above" is a reference to Finnegan's advice to plaintiffs in 2008 that the firm did not believe there was a conflict, Compl. at ¶ 31; Finnegan's alleged failure to disclose unspecified information to the USPTO, *id.* at ¶ 32; and the filing of the so-called "amendment" to plaintiffs' patent. *Id.* at ¶ 33. These allegations do not suggest that Finnegan had any dishonest, fraudulent, deceitful, or deceptive purpose for engaging in any of the conduct at issue. Accordingly, plaintiffs have not stated a cause of action under G.L. c. 93A, § 11.

Massachusetts courts have consistently held that attorneys cannot be held liable for a G.L. c. 93A violation where the allegations are for mere attorney negligence. *See Meyer* v. *Wagner*, 709 N.E.2d 784, 793 (Mass. 1999) ("An unfair or deceptive act requires more than a finding of negligence."); *see also Poly* v. *Moylan*, 667 N.E.2d 250, 257 (Mass. 1996) (attorney not liable under c. 93A because he had not engaged in any "dishonesty, fraud, deceit or misrepresentation"); *Davis, Malm, D'Agostine, P.C.* v. *Vale*, 2005 WL 1155171, *4 (Mass. Super. 2005) (granting a law firm's motion to dismiss G.L. c. 93A claim because facts did "not support the required element that the conduct be unfair or otherwise unscrupulous. . . . The mere repetition of the assertions underlying the . . . negligence . . . claim[], without more, is insufficient."); *C.W. Keller & Assocs., Inc.* v. *Cullen*, 2000 WL 1180539, *3 (Mass. Super. 2000) (notwithstanding finding of negligence, lawyer's conduct simply did not amount to "'immoral, unethical, oppressive, or unscrupulous behavior' against which the statute is designed to protect."); *American Tel. & Tel. Co.* v. *IMR Capital Corp.*, 888 F. Supp. 221, 256 (D. Mass. 1995) ("Ordinary negligence alone, which does not reek of callousness or meretriciousness, is not the sort of truly inequitable marketplace behavior which Chapter 93A was intended to punish.").

Here, plaintiffs do not allege any facts suggesting that Finnegan engaged in dishonesty, fraud, deceit, or misrepresentation, and they include no claims for fraud or misrepresentation in their complaint. At most, plaintiffs allege that Finnegan failed to discover and advise plaintiffs of a purported conflict of interest. Plaintiffs do not allege that Finnegan was driven by any ulterior or improper motive or purpose in failing to advise plaintiffs of the purported conflict.

Plaintiffs do allege that after they brought the alleged conflict to Finnegan's attention, Finnegan "continued to represent the conflicting patents without requesting or obtaining written consent from either party." Compl. at ¶ 31. Plaintiffs do not, however, allege that Finnegan engaged in any of this conduct dishonestly or deceitfully. Nor could they credibly make such an assertion, where plaintiffs admit that Finnegan advised them promptly of the firm's position that there was no conflict, and where plaintiffs obviously knew that Finnegan was continuing to represent them.

Further, to the extent that plaintiffs rely on acts or omissions that occurred after the initial retention, the claim fails for the additional reason that plaintiffs cannot articulate any damages flowing from these alleged actions. As set forth above, the only possible damages theory that can be gleaned from plaintiffs' Complaint is that plaintiffs would not have hired Finnegan or moved forward with plaintiffs' purported business plan if Finnegan had disclosed the existence of the Masunaga patent application in 2003, when plaintiffs first retained Finnegan. Specifically, plaintiffs allege that had they been aware of the Masunaga patent application in 2003, they "would not have paid thousands of dollars to Finnegan" and "would not have paid millions of dollars to develop products based on the Inventions and patent that Finnegan was prosecuting on their behalf." Compl. at ¶¶ 28, 29. In light of this purported theory of damages, plaintiffs have not alleged, and cannot allege, that they suffered any damages as a result of actions allegedly

15

taken by Finnegan during its prosecution of the plaintiffs' patent applications. Plaintiffs' failure to allege any damages arising from the alleged violations of G.L. c. 93A provides a separate basis for dismissal of this claim. *See* G.L. c. 93A, § 11 (requiring a "loss of money or property" as a result of unfair or deceptive conduct); *McCann* v. *Davis, Malm & D'Agostine*, 669 N.E.2d 1077, 1079 (Mass. 1996) (allegedly unfair or deceptive practice must be the cause of plaintiff's claimed damages).

In sum, plaintiffs' Complaint is devoid of any facts suggesting that Finnegan engaged in the type of dishonest, deceitful, or fraudulent conduct that is necessary to state a claim against Finnegan under G.L. c. 93A, § 11, and plaintiffs fail to allege that they suffered any damages from any conduct that occurred after plaintiffs' initial retention of Finnegan. Plaintiffs therefore have failed to state a claim upon which relief can be granted, and Count III of the Complaint must be dismissed.

## III. CONCLUSION

For the reasons stated, defendants respectfully request that all claims in this action be dismissed for failure to state a claim upon which relief can be granted.

Respectfully submitted,

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP, LAWRENCE R. ROBINS, ERIC P. RACITI, MATTHEW R. VAN EMAN, ERNEST F. CHAPMAN, and ARTHUR S. GARRETT,

By their attorneys,


/s/ Jan M. Kendrick
Erin K. Higgins (BBO#559510)
Jan M. Kendrick (BBO #678806)
CONN KAVANAUGH ROSENTHAL
  PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
(617) 482-8200
ehiggins@ckrpf.com
jkendrick@ckrpf.com

OF COUNSEL:

Thomas B. Mason
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington , DC 20036-5807
(202) 778-1800
tmason@zuckerman.com

John J. Connolly
ZUCKERMAN SPAEDER LLP
100 E. Pratt Street, Suite 2400
Baltimore, MD 21202
(404) 332-0444
jconnolly@zuckerman.com

Certificate of Service
I hereby certify that this document filed through the ECF system will be served electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and by mail to any nonregistered party on the 19th day of September, 2012.
/s/ Jan M. Kendrick

742195.1